YORK et al., Appellants,

v.

GENERAL ELECTRIC COMPANY et al., Appellees.

[Cite as *York v. Gen. Elec. Co.* (2001), 144 Ohio App.3d 191.]

Court of Appeals of Ohio,
Twelfth District, Butler County.

No. CA2000–12–241.

Decided June 11, 2001.

*Clements, Mahin & Cohen, LLP,* and *William E. Clements,* for appellants John W. York and Mary York.

*Jones, Day, Reavis & Pogue, Matthew W. Lampe* and *Lori A. Clary,* for appellees General Electric Company, Sedgwick Claims Management Services, Inc., and Deborah Byrd.

*Reminger & Reminger Co., L.P.A., Brian D. Goldwasser* and *Vincent P. Antaki,* for appellee Sur–Tech Investigations, Inc.

---

WILLIAM W. YOUNG, Presiding Judge.

Plaintiffs-appellants, John W. and Mary York, appeal a judgment of the Butler County Court of Common Pleas granting summary judgment in favor of defendants-appellees, General Electric Company ("GE"), Sedgwick Claims Management Services ("Sedgwick"), Deborah Byrd ("Byrd"), and Sur–Tech Investigations, Inc. ("Sur–Tech").

John York[1] ("York") was employed by GE as a machine repairman at its Evendale, Ohio facility. In 1987, York received workers' compensation benefits for an injury he sustained to his lower back while at work. In 1995, he aggravated his back injury while at work. In 1997, York began treatment with a chiropractor in connection with these injuries. The cost of the treatments was covered by York's workers' compensation with GE.

In 1997, York sought to increase the workers' compensation benefits he was receiving in connection with the back injury. He spoke with Byrd, who was employed by Sedgwick as a Senior Claims Examiner managing claims for GE. During a conversation with Byrd, York mentioned a motorcycle hobby. As a result of this conversation, Byrd hired Sur–Tech to investigate whether York was engaged in any activity inconsistent with his limitations and whether York displayed disability or discomfort in his daily activities.

---

1. In this decision, references to "York" refer to John York individually. References to "appellants" refer to John and Mary York collectively.

Sur–Tech conducted surveillance of York on June 16 and 17, 1998, and again on July 4 and 5, 1998. Sur–Tech videotaped York arriving at work, going into the chiropractor's office, and visiting a lawnmower repair shop. Sur–Tech also videotaped York working in his yard, riding a motorcycle, mowing the grass, and performing other activities in his yard. The video surveillance of York's home was conducted from across the street. After viewing the videotape, GE decided to contest the payment of chiropractic treatments.

On January 25, 2000, appellants filed a complaint against GE, Sur–Tech, Sedgwick, and Byrd for invasion of privacy and intentional infliction of emotional distress. Both sides filed motions for summary judgment. On November 9, 2000, the trial court granted summary judgment in favor of appellees. The trial court found that there was no invasion of privacy because the actions videotaped were public, not private, activities. In regard to the intentional infliction of emotional distress claim, the trial court found that the videotaping could not be construed as extreme and outrageous conduct.

Appellants appeal the trial court's decision to grant summary judgment to appellees, and raise the following three assignments of error:

Assignment of Error No. 1

"The trial court erred to the prejudice of plaintiff[s]-appellants in granting appellees['] motions for summary judgment."

Assignment of Error No. 2

"The trial court erred to the prejudice of plaintiff[s]-appellants in overruling their motion for summary judgment."

Assignment of Error No. 3

"The trial court erred to the prejudice of plaintiff[s]-appellants in overruling their motions to compel answers to interrogatories and request for production of documents propounded to defendant Sur–Tech, Inc. and defendants General Electric, Sedgwick and Byrd."

◼ Appellants' first two assignments of error relate to the trial court's decision to grant summary judgment to appellees and to deny appellants' motion for summary judgment. Summary judgment is appropriate pursuant to Civ.R. 56(C) when (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) construing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to only one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47.

■ The party seeking summary judgment bears the initial burden of informing the court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact as to the essential elements of the nonmoving party's claim. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264, 274. "[I]f the moving party has satisfied its initial burden, the nonmoving party has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate shall be entered against the nonmoving party." *Id.* Our standard of review on summary judgment is *de novo.* *Jones v. Shelly Co.* (1995), 106 Ohio App.3d 440, 666 N.E.2d 316.

Appellants argue that the trial court erred in granting summary judgment because an invasion of privacy occurred when appellees used telephoto and light-enhancing equipment to film inside their residential quarters.

The Supreme Court of Ohio first recognized an action for invasion of privacy in *Housh v. Peth* (1956), 165 Ohio St. 35, 59 O.O. 60, 133 N.E.2d 340, by recognizing three causes of action: (1) unwarranted appropriation or exploitation of one's personality; (2) the publicizing of private affairs with which the public has no legitimate concern; and (3) the wrongful intrusion into one's private activities. *Id.,* paragraph two of the syllabus. The court later refined its definition of the third cause of action, which is at issue in this case. The court stated that "[t]he scope of a person's liability for intrusion into another's seclusion is stated in Section 652B of the Restatement of Torts 2d, as follows: 'One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.'" *Sustin v. Fee* (1982), 69 Ohio St.2d 143, 145, 23 O.O.3d 182, 184, 431 N.E.2d 992, 993–994.

The Restatement of Torts 2d states that a person is subject to liability for invasion of privacy "only when he has intruded into a private place, or has otherwise invaded a private seclusion that the plaintiff has thrown about his person or affairs." Restatement of the Law, Torts (1977), Section 652B, Comment *c.* Thus, there is no liability for "observing [a person] or even taking his photograph while he is walking on the public highway, since he is not then in seclusion, and his appearance is public and open to the public eye." *Id.* Accordingly, the invasion of privacy must involve the viewing of affairs that are private and not in public view. See *id.; Jackson v. Playboy Enterprises, Inc.* (S.D.Ohio 1983), 574 F.Supp. 10, 12–13; *Morgan v. Fisher Foods, Inc.* (Dec. 5, 1991), Cuyahoga App. No. 59488, unreported, 1991 WL 261324; *Hunter v. Combs* (June ·30, 1982), Hamilton App. No. C–810793, unreported, 1982 WL 8599.

■ Appellants argue that appellees intruded into York's privacy by using special lenses and light-enhancing equipment in an attempt to "peer into the York household and invade their privacy." However, the court has carefully reviewed the contents of the videotape and must disagree with this characterization of its contents. The video depicts York on his front porch, in his yard, driving on public streets, and walking in public places. All of the scenes on the video were outside and in public view. The video contains a full view of appellants' home, and depicts a public road, State Route 27, running in front of appellants' property. York admitted in a deposition that the activities occurring on the video could be seen from across the street or by anyone driving by. He admitted that no one entered his property and that the filming was conducted from across the street. Even assuming that a telephoto lens or special lighting equipment was used to film scenes from across the street, these activities were still open to the public.

Appellants' reliance on a footnote in *Sustin* to support their argument that an invasion of privacy occurs when a person uses special viewing equipment is misplaced. In this footnote, the court noted that the defendant had used binoculars only to observe the contents of the plaintiffs' yard, and that nothing in the record suggested that the binoculars were used to gaze into the plaintiffs' house. *Sustin* at 144, 23 O.O.3d at 183, 431 N.E.2d at 993, fn. 2. The facts of this case present the same scenario. The outside of appellants' home was videotaped, and if any enhancing equipment was used, it did not depict any private activities of appellants within their home.

■ Appellants also argue that the filing of a workers' compensation claim does not justify an investigation that constitutes an invasion of privacy. While this statement of the law is correct, see *Sowards v. Norbar, Inc.* (1992), 78 Ohio App.3d 545, 605 N.E.2d 468, as discussed above, the facts of this case do not involve an invasion of appellants' privacy. It is not unreasonable for an employer to conduct an investigation into a person's injury while the person is receiving workers' compensation benefits, as long as the investigation does not amount to an invasion of the worker's privacy. See *Weimer v. Youngstown Steel Door Co.* (Sept. 26, 1983), Mahoning App. No. 82 C.A. 81, unreported, 1983 WL 6718. Appellants' first and second assignments of error are overruled.

In appellants' third assignment of error, they request that motions to compel discovery which were pending before the trial court be reinstated upon reversal of the trial court's decision. Given our decision that the trial court did not err in dismissing appellants' claims, this assignment of error is moot.

*Judgment affirmed.*

WALSH and POWELL, JJ., concur.